IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISOVOLTA AG,<br>            Plaintiff,<br><br>            v<br>DIELECTRIC SOLUTIONS, LLC,<br>            Defendant. | )<br>)<br>)<br>)<br>)   2:11-cv-910<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF COURT</u>**

Pending before the Court is PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION FOR CONTEMPT OF COURT AND AWARD OF SANCTIONS (Document No. 21) filed by Plaintiff Isovolta AG ("Isovolta"). Defendant Dielectric Solutions, LLC ("Dielectric") filed a response (Document No. 24) and Isovolta filed a reply (Document No. 25). On November 7, 2011 the Court conducted a status conference followed by an evidentiary hearing on November 9, 2011. The motion is ripe for disposition.

<u>Factual and Procedural Background</u>

This is a business dispute. Isovolta filed this lawsuit and a motion for a temporary restraining order (TRO) in July 2011, alleging that Dielectric had failed to pay past-due lease payments for, or to return, certain precious metals (platinum and rhodium) that were being utilized in Dielectric's manufacturing process. The matter was scheduled for a hearing before the Court on September 2, 2011. On September 1, 2011, the parties entered into a Settlement Agreement and Release to resolve their respective claims in the lawsuit. On September 2, 2011

at the request of Plaintiff, Isovolta, the Court adopted the Settlement Agreement and Release as a Consent Order and retained jurisdiction over any action(s) relating to enforcement of it.

The Settlement Agreement and Release provided that Dielectric would return all of the precious metals to Isovolta in accordance with dates and amounts set forth in a "Minimum Return Schedule" attached as Exhibit C. Time was explicitly of the essence. Dielectric's return of the precious metals was a "condition precedent" to Isovolta's obligations, and "strict compliance with the date of return set forth therein" was required. ¶¶ 1(e)(ii), 2(b). In addition, Dielectric was to provide Isovolta with specified quantities of particular products known as 1277 and 1612 in lieu of the defaulted lease payments it owed to Isovolta.

Dielectric completed the first six shipments of precious metals in compliance with the Minimum Return Schedule. Dielectric also shipped finished products 1277 and 1612 to Isovolta, but did not provide the industry standard Fabric Certificates of Analysis/Compliance or Warranties, apparently on the basis that the products were being provided "free of charge" and "as is." Isovolta requires such Certificates and Warranties from its vendors of products and such had been standard in the past course of dealings between Isovolta and Dielectric. On September 21, 2011, Christoph Zangl, Isovolta's Manager of Strategic Projects, sent an email to Todd Kadar, President of Dielectric, to explain that the product shipments were in fact supported by sufficient "consideration" (waiver of defaulted lease payments) and that Isovolta was unwilling to waive its rights to Certificates of Compliance and Warranties.

As of October 6, 2011, Dielectric suspended its scheduled return of the precious metals to Isovolta allegedly, "due to Isovolta's refusal to provide assurances that a potential product quality claim would not be used as a default mechanism under the Settlement Agreement." Dielectric failed to comply with the Minimum Return Schedule shipments of the precious metals

on October 6, 13, 20 and 24, 2011, the final date by which all of the precious metals were to have been returned to Isovolta. As a result, Isovolta has incurred additional lease payment obligations to its supplier of the precious metals, Mitsubishi.

Isovolta filed the instant motion to enforce the Consent Order Settlement Agreement and Release and for contempt of court. Isovolta also seeks counsel fees, costs and expenses. At the November 7, 2011 status conference, counsel for Dielectric represented that it was physically impossible to return all of the precious metals immediately because they are utilized and maintained at a very high temperature in the production process and time is needed for appropriate cool-down prior to shipment. Counsel represented that a shipment of at least 18,777.5 grams (the minimum set for the October 6 shipment on the Minimum Return Schedule) would be made by Tuesday, November 8, 2011.

At the November 9 hearing, Zangl, Kadar and Ken Beer, Vice President of Dielectric, testified. Both parties agreed that a shipment of precious metals had been made the previous day, which amounted to 17,560.6 grams (less than the 18,775.5 promised). Kadar testified that the shortfall was due to a computational error and that the "spirit" of the return schedule was to provide for the return of specific items/pieces of machines. Kadar also testified that the effective price of the finished 1277 & 1612 products which were provided to Isovolta at $0.60/yard represented a steep discount from the industry standard rate of $1.06/yard. Beer testified that warranties were common in the industry when parties had an ongoing relationship. Ultimately, Dielectric represented to the Court that it: (1) would provide Certificates of Compliance and Warranties for all product shipments; (2) would make two shipments of precious metals by next week, such that Isovolta will possess at least 95% of the precious metals; and (3) Dielectric will

replace the last 5% of the precious metals, and had already placed an expedited order that would result in complete possession by Isovolta within two (2) weeks.

Findings of Fact and Conclusions of Law

To prove civil contempt, a plaintiff must demonstrate: (1) that a valid order of court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order. *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995). A plaintiff must prove each of the elements by "clear and convincing evidence." *Id*. "Although consent decrees are judicial acts, they have many of the attributes of contracts voluntarily undertaken and are construed according to traditional precepts of contract construction." *Fox v. United States Dept. of Housing and Urban Development*, 680 F.2d 315, 319 (3d Cir. 1982) (citations omitted). In enforcing a consent order, the Court must adhere strictly to its terms in recognition that, in most instances, the defendant has neither admitted nor been found by a court to have committed any wrongdoing. *Id*. The order must be sufficiently specific and definite to give "fair warning" to the alleged contemnor that his conduct is prohibited. *Harris v. City of Philadelphia*, 47 F.3d 1342, 1350 (3d Cir. 1995). *See also* Fed. R. Civ. P. 65(d) (injunction order shall describe "in reasonable detail" the acts to be restrained). "[A] contempt citation should not be granted if there is 'ground to doubt the wrongfulness' of the defendant's conduct." *Id*. Willfulness is not a necessary element of civil contempt and good faith is not necessarily a defense. *Harley Davidson, Inc. v. Morris*, 19 F.3d 142, 148-49 (3d Cir. 1994).

The Court finds that Dielectric unquestionably breached the Consent Order Settlement Agreement and Release and Dielectric is in contempt of Court for having violated the September 2, 2011 Consent Order. Dielectric purposefully failed to comply with the Minimum Return

Schedule delivery of the precious metals to Isovolta. The alleged dispute over Certificates of Compliance and Warrenties regarding delivered products did not justify or excuse Dielectric's breach. Indeed, the Court finds that Fabric Certificates of Compliance and Warranties for finished products 1277 and 1612 are standard in the industry, consistent with the prior relationship between Isovolta and Dielectric, and must be provided to Isovolta by Dielectric immediately.

To purge itself of contempt of Court, Dielectric shall:

(1) immediately, but in no event later than November 16, 2011, provide to Isovolta Fabric Certificates of Analysis/Compliance and standard Warranties for all product 1277 and 1612 shipments made to Isovolta per the Settlement Agreement;

(2) deliver shipment(s) of precious metals on or before November 16, 2011, such that Isovolta will have regained possession of at least 65,888.62 grams of the precious metals (95% of 69,356.44 grams, the total amount set forth on the Minimum Return Schedule); and,

(3) replace the last 5% of the precious metals, such that Isovolta will regain possession of the entire 69,356.44 grams of precious metals due it on or before November 23, 2011.

Sanctions for civil contempt of a court order are designed to serve two purposes: (1) to coerce compliance with the Order; and (2) to compensate for losses sustained by the opposing party due to the disobedience. *Marshak v. Treadwell*, 595 F.3d 478, 494 (3d Cir. 2009). A compensatory sanction may not exceed the actual loss suffered by the party wronged. *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir.1992). The Court finds that as a result of Dielectric's breach and contempt, Isovolta has incurred, and may seek recovery for monetary damages including

5

additional lease payment(s) to Mitsubishi, Zangl's travel expenses from Austria, and reasonable attorneys fees and costs.  Isovolta shall file an appropriate petition for an award of said costs, fees and expenses on or before November 21, 2011 which shall specify and justify the amounts it seeks to recover.  Dielectric may file a response thereto on or before December 1, 2011.

    An appropriate Order follows.


                                                    McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISOVOLTA AG, <br>         Plaintiff, <br><br> v <br><br> DIELECTRIC SOLUTIONS, LLC, <br>         Defendant. | ) <br> ) <br> ) <br> ) 2:11-cv-910 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER OF COURT**

AND NOW, this 10th day of November, 2011, in accordance with the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED and DECREED that PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION FOR CONTEMPT OF COURT AND AWARD OF SANCTIONS (Document No. 21) is **GRANTED**. The Court finds that Dielectric has breached the Consent Order Settlement Agreement and Release and is in contempt of Court.

To purge itself contempt of Court, Dielectric shall:

(1) immediately, but in no event later than November 16, 2011, provide to Isovolta Fabric Certificates of Analysis/Compliance and standard Warranties for all product 1277 and 1612 shipments made to Isovolta per the Settlement Agreement;

(2) deliver shipment(s) of precious metals on or before November 16, 2011, such that Isovolta will have regained possession of at least 65,888.62 grams of the precious metals (95% of 69,356.44 grams, the total amount set forth on the Minimum Return Schedule); and,

(3) replace the last 5% of the precious metals, such that Isovolta will regain possession of the entire 69,356.44 grams of precious metals due it on or before November 23, 2011.

Isovolta shall file an appropriate petition for an award of costs, fees and expenses on or before November 21, 2011 which shall specify and justify the amounts it seeks to recover. Dielectric may file a response thereto on or before December 1, 2011.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Cindy Dunlap Hinkle, Esquire**
Email: cindy.hinkle@bipc.com
**Stanley Yorsz, Esquire**
Email: stanley.yorsz@bipc.com

**Robert O. Lampl, Esquire**
Email: rol@lampllaw.com